UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 1:19-mj-03701 AOR

UNITED STATES OF AMERICA

v.

JOSE YOAN BATISTA and
FIDEL ROSALES ROSEL,

    **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___Yes  _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___Yes  _X_ No

                                          Respectfully submitted,

                                          ARIANA FAJARDO ORSHAN
                                          UNITED STATES ATTORNEY

By: *Carlee M. Valenti*
       CARLEE M. VALENTI
       Special Assistant United States Attorney
       Court I.D. No. A5502473
       11200 NW 20th Street, Suite 101
       Miami, Florida 33172
       Tel: (305) 715-7646/7653
       Fax: (305) 715-7639
       Email: carlee.valenti@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Jose Yoan Batista and Fidel Rosales Rosell,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:19-mj-03701 AOR<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 22, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Conspiracy to possess with intent to distribute a controlled substance. |
| Title 21, United States Code, Section 841(a)(1) | Possession with intent to distribute a controlled substance. |

This criminal complaint is based on these facts:

Please see the attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Victor Carril, Task Force Officer -DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/23/2019__

*Judge's signature*

City and state: __Miami, Florida__   Hon. Alicia M. Otazo-Reyes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Victor Carril, being duly sworn, attest and affirm the following:

1. I am a City of Sweetwater Police Detective and have been so employed since May 2005. Furthermore, I work as a Task Force Officer with the Drug Enforcement Administration (DEA) and have been so employed since November 2015. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Miami Field Division DEA Group 43. As a DEA Task Force Officer, I am empowered by law to conduct investigations of, and/or to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841, 846, 952, and Title 18, United States Code, Sections 922 and 924, among other offenses. I have been trained on the subject of narcotics trafficking and have been personally involved in investigations concerning narcotics trafficking, weapons trafficking, violent crimes, and organized criminal enterprises. I have received specialized training in narcotics investigations and identification as well as the laws pertaining to search and seizure. Based on my training, experience, and participation in narcotics investigations, I am familiar with the methods of operation of drug traffickers.

2. This affidavit is submitted in support of a criminal complaint against defendants Jose Yoan Batista (BATISTA) and Fidel Rosales Rosell (ROSELL). As explained in detail below, I respectfully submit that there is probable cause to believe that, on or about October 22, 2019, in Miami-Dade County, in the Southern District of Florida, the Defendants did conspire to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846; and did possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The information contained in this affidavit is based on my personal knowledge as well as information relayed to me by other law enforcement agents and officers involved in this

investigation. The information set forth in this affidavit is provided solely for the purpose of establishing probable cause for the arrest of the Defendants. As such, it does not include all of the information known to me about this investigation.

4. In or around March 2019, law enforcement received information from a Confidential Source (the CS)[1] about drug traffickers identified as BATISTA and ROSELL located in Hialeah, Florida. At law enforcement's direction, the CS began to communicate with ROSELL about selling ecstasy (a common name for the controlled substance MDMA and other similar substances) and other narcotics via text messages and audio calls.

5. In or around August 2019, ROSELL agreed to sell the CS five hundred (500) ecstasy pills for $6.00 per pill. ROSELL informed the CS that he (ROSELL) would have to check with his (ROSELL's) supplier to verify the availability of the ecstasy. After contacting ROSELL's supplier, ROSELL informed the CS that he (ROSELL) would meet with the CS to complete the narcotics transaction on August 6, 2019. Throughout the course of the investigation, law enforcement identified ROSELL's drug supplier to be BATISTA.

6. On or about August 6, 2019, the CS informed law enforcement that he had observed ROSELL arrive at the Atlantic Ceviche House & Lounge (Atlantic Ceviche) in Hialeah, Florida. Upon arriving at Atlantic Ceviche, ROSELL and BATISTA went behind the bar near a safe. When they returned from behind the bar, ROSELL was holding a yellow plastic bag with an unknown object inside of it. ROSELL and BATISTA then walked outside to talk while ROSELL was still holding the yellow plastic bag underneath his arm. After leaving, ROSELL informed the CS that they would meet on the following day, August 7, 2019, to complete the narcotics transaction.

---

[1] The CS has been previously convicted of narcotics trafficking in the Southern District of Florida and is pending sentencing. The CS is cooperating with law enforcement in the hopes of receiving a reduction in his/her sentence.

2

7. On or about August 7, 2019, ROSELL and the CS arranged to meet at Atlantic Ceviche. The CS met with law enforcement, was searched for contraband and currency with negative results, and was provided $3,000 in pre-recorded buy money. The CS then traveled to Atlantic Ceviche. Once at Atlantic Ceviche, law enforcement observed ROSELL carrying a yellow plastic bag and walking toward the CS. ROSELL then handed the CS a yellow plastic bag containing a white plastic pill bottle with approximately 500 pink tablets of suspected ecstasy. The yellow plastic bag ROSELL handed to the CS appeared to be the same yellow plastic bag ROSELL received from BATISTA the day before. The CS handed ROSELL pre-recorded buy money, and ROSELL departed the area.

8. On or about August 16, 2019, ROSELL agreed to sell the CS 1,000 ecstasy pills once again at Atlantic Ceviche. Prior to the transaction, the CS met with law enforcement at a predetermined meet location. At that time, the CS was given $6,000 of pre-recorded buy money in a white paper bag, and was searched for contraband and additional currency with negative results. Law enforcement observed ROSELL arrive at Atlantic Ceviche. Once inside, ROSELL and the CS had a meeting that was audio and video recorded. ROSELL removed a blue leather pouch from his waistband, which contained 1,000 pink ecstasy pills, and handed it to the CS. The CS then handed ROSELL a white paper bag containing $6,000 to complete the deal. Law enforcement conducted a presumptive field-test kit on the contents of the suspected ecstasy. This test resulted in a positive result for the presence of MDMA.

9. On or about August 26, 2019, the CS spoke to ROSELL and ordered 600 ecstasy pills. ROSELL advised the CS that he would bring the CS the ecstasy at Atlantic Ceviche.

10. On August 29, 2019, ROSELL arrived at Atlantic Ceviche to sell the pills to the CS. The CS was given a Ray Ban box containing the ecstasy pills. The CS then gave ROSELL

$3,600 of pre-recorded buy money. The CS left Atlantic Ceviche in the CS's vehicle. Law enforcement then followed the CS to a predetermined meet location. Once at the location, the CS gave law enforcement the silver Ray Ban box containing approximately 600 pills of suspected ecstasy. Law enforcement conducted a presumptive field-test kit on the contents of the suspected ecstasy. This test resulted in a positive result for the presence of MDMA.

11. On or about September 25, 2019, at approximately 12:30 p.m., the CS met ROSELL at Atlantic Ceviche. The CS asked ROSELL if he could purchase 100 Oxycodone pills. ROSELL told the CS that Yoan, in reference to BATISTA, would not allow anyone to purchase anything less than 500 pills. The CS asked if he could sell him/her 500 Oxycodone pills. ROSELL stepped away and made a phone call. After the phone call, ROSELL stated he could get the CS the pills by 5 p.m. At approximately 3 p.m., the CS called ROSELL and stated he no longer wanted the pills because his/her buyer did not want to wait until 5 p.m.

12. Law enforcement then examined the toll records for September 25, 2019, for ROSELL's phone and learned that after the CS ordered the 500 Oxycodone pills, ROSELL called BATISTA. Further toll analysis revealed that after the CS called to cancel the Oxycodone pill order, ROSELL immediately called BATISTA back. Based on my training, knowledge and experience in the field of narcotics, I believe that the toll records show that ROSELL was getting the illegal pills from BATISTA.

13. On or about October 1, 2019, ROSELL agreed to sell the CS 500 Oxycodone pills for $10.00 per pill on the following morning of October 2, 2019.

14. On or about October 2, 2019, law enforcement was conducting surveillance on ROSELL. Law enforcement observed ROSELL drive to BATISTA's residence in Hialeah, Florida. ROSELL then entered BATISTA's residence. Shortly after law enforcement observed

ROSELL exit the residence, they observed ROSELL enter his vehicle and drive toward Atlantic Ceviche. The CS met with law enforcement, was searched for contraband and excess currency and negative results, and was provided $5,000 in pre-recorded buy money. The CS then traveled to Atlantic Ceviche. Upon arriving at Atlantic Ceviche, ROSELL showed the CS a plastic bottle containing 500 Oxycodone pills. The CS then paid ROSELL $5000 to conclude the deal.

15. Further toll analysis revealed that after the CS called ROSELL to place the order, ROSELL immediately called BATISTA on October 1, 2019. Tolls from ROSELL's cell phone on October 2, 2019 also showed that ROSELL was in contact with BATISTA both before and after the narcotics transaction took place on October 2, 2019.

16. On October 18, 2019, this Court signed search warrants authorizing the search of BATISTA's residence, Atlantic Ceviche, and ROSELL's vehicle, a Nissan Altima. Law enforcement then executed these warrants on the morning of October 22, 2019.

17. Prior to the execution of the search warrants on October 22, 2019, ROSELL agreed to sell the CS 1,000 Ecstasy pills, 500 Xanax pills, and 1,000 Oxycodone pills for the total price of $17,000.00. On October 22, 2019, law enforce observed ROSELL arrive at Atlantic Ceviche. Law enforcement also observed ROSELL exit Atlantic Ceviche and place a phone call. The CS confirmed to law enforcement that ROSELL called BATISTA to place the order for the pills. ROSELL then informed the CS that he would return to Atlantic Ceviche in 30 minutes.

18. Upon execution of the search warrant at BATISTA's residence, law enforcement located BATISTA and he was then placed into custody. Upon execution of the warrant, law enforcement picked up BATISTA's cell phone to seize as evidence and observed missed calls from ROSELL on BATISTA's phone from earlier that day. In addition, law enforcement further seized approximately 1,398 that have the same marking of Oxycodone pills, approximately 168 of

5

suspected ecstasy pills, 10 firearms, and a money-counting machine. Upon execution of the search warrant at the Atlantic Ceviche House and Lounge, law enforcement sized approximately 10 pills consisting of suspected Oxycodone, ecstasy and Telsa in a wall safe.

19. Finally, law enforcement observed ROSELL's Nissan Altima parked in front of Atlantic Ceviche. ROSELL was observed leaving Atlantic Ceviche, and ROSELL was then stopped pursuant to the execution of the search warrant for the Nissan Altima. ROSELL was placed into custody, and was transported to a law enforcement facility for booking and interview.

20. Post-*Miranda* BATISTA identified to law enforcement the location of hidden pills located within the house, and he additionally admitted that all the pills found in the house by law enforcement belonged to him (BATISTA).

21. Based on the above facts, I submit there is probable cause to believe that, from on or about April 2019 and continuing until on or about October 22, 2019, in Miami-Dade County, in the Southern District of Florida, defendants Jose Yoan BATISTA and Fidel Rosales ROSELL did conspire to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846; and did possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
TASK FORCE OFFICER VICTOR CARRIL
U.S. DRUG ENFORCEMENT ADMIN.

Subscribed and sworn to before
me this 23 day of October, 2019.

_____
HON. ALICIA M. OTAZO REYES
UNITED STATES MAGISTRATE JUDGE